**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JOHN O'CONNOR;**<br>**LUCIA O'CONNOR,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**FARMERS INSURANCE EXCHANGE;**<br>**FARMERS INSURANCE COMPANY, INC.;**<br>**MID-CENTURY INSURANCE CO.,**<br><br>**Defendants.** | **Case No. 25-CV-00332-SEH-SH** |

## OPINION AND ORDER

Before the Court is a motion to remand, filed by Plaintiffs John and Lucia O'Connor. [ECF No. 24]. For the reasons stated below, the motion is granted and the Court remands this case back to the Tulsa County District Court.

## I. Background

Plaintiffs allege they were victims of an insurance scheme orchestrated by Defendants Farmers Insurance Exchange ("the Exchange"), Farmers Insurance Company, Inc. ("Farmers"), and Mid-Century Insurance Co. ("Mid-Century"), (collectively, "Defendants"). [ECF No. 2-1]. According to their

complaint,[1] Plaintiffs obtained a homeowner's policy from Defendants with additional coverage that, based upon Defendants' representations, would "fully replace Plaintiffs' roof in the event of storm damage." [*Id.* at 9–10]. Relying on these representations, Plaintiffs paid premiums on the policy for several years. [*Id.* at 10, 33].

Plaintiffs allege that wind and hail during a storm damaged their home and its roof. [ECF No. 2-1 at 22]. However, when they filed an insurance claim, Defendants inspected the home and determined that the storm damage was less than Plaintiffs' deductible. [*Id.*] Effectively, Defendants denied Plaintiffs' claim. [*Id.*] Plaintiffs allege Defendants arrived at this decision by employing bad-faith tactics. These alleged tactics include: (1) failing to inspect Plaintiffs' home at issuance or renewal of the policy; (2) limiting Plaintiffs' coverage based on pre-existing roof damage; (3) limiting coverage based on undisclosed, arbitrary rules and requirements; and (4) utilizing unreliable software to calculate damages. [*See id.* at 16–21]. In summary, Plaintiffs allege Defendants sell homeowner's policies to insureds but limit and/or deny claims for covered losses.

Plaintiffs sued Defendants in the Tulsa County District Court, asserting

---

[1] Although Plaintiffs filed a petition in state court, in the interest of clarity and consistency with the Federal Rules of Civil Procedure, the Court will refer to Plaintiffs' petition as the "complaint."

claims for breach of contract and breach of the duty of good faith and fair dealing. [ECF No. 2-1 at 23–30]. They further asserted against Defendants negligent misrepresentation and constructive fraud claims. [*Id.* at 30–35]. Mid-Century removed the action to this Court, arguing that Plaintiffs fraudulently joined the Exchange.[2] [ECF No. 2]. Plaintiffs move to remand, contending that Mid-Century has failed to carry its burden of proving fraudulent joinder.[3] [ECF No. 24].

## II. **Discussion**

"Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013) (citation omitted). The federal removal statute permits a defendant to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). This includes when the district court has diversity jurisdiction, which requires the amount in controversy to exceed $75,000 and

[2] The parties do not appear to dispute that the Exchange is an "unincorporated association" and citizen of Oklahoma, where some of its members reside. [ECF No. 2 at 2].

[3] Plaintiffs also move for leave to file a notice of additional authority, which Mid-Century opposes. [ECF Nos. 33, 34]. Because the Court does not find it necessary to rely on Plaintiffs' motion [ECF No. 33] or any case identified in its exhibit [ECF No. 33-1] to determine whether remand is appropriate, it will not rule on that motion here.

the parties to be citizens of different states. 28 U.S.C. § 1332(a)(1). "Complete diversity is lacking when any of the plaintiffs has the same [citizenship] as even a single defendant." *Dutcher*, 733 F.3d at 987.

"While a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006).[4] To show that a defendant has been fraudulently joined, the removing party "must demonstrate either: (1) actual fraud in the pleading of the jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988 (citation omitted); *see also Mayes Cnty. FOP Lodge #116, Inc. v. Farmers Ins. Exch.*, No. 19-CV-687, 2020 WL 6136236, at *3 (N.D. Okla. Oct. 19, 2020) ("*Mayes Cnty.*") ("[T]he party asserting federal jurisdiction must show that the plaintiff would have no possibility of recovery against the defendant."). When either occurs, the district court disregards the fraudulently joined party "for purposes of assessing complete diversity." *Dutcher*, 733 F.3d at 988.

"The defendant seeking removal bears a heavy burden of proving

---

[4] Unpublished decisions are not precedential, but they may be cited for their persuasive value. *See* Fed. R. App. 32.1.

fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988 (citation omitted); *see also Montano v. Allstate Indem.*, 211 F.3d 1278 (Table), 2000 WL 525592, at *2 (10th Cir. Apr. 14, 2000) (citation omitted) ("This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6)[.]"). In deciding, the court may "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Nerad*, 203 F. App'x at 913 (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

Mid-Century advances two arguments in support of removal.[5] First, it argues that Oklahoma law does not recognize a breach of contract claim where no contract exists between the plaintiff and defendant. [ECF No. 2 at 5–8; ECF No. 28 at 6–8]. Second, it contends Oklahoma law bars "alter ego" tort claims against the Exchange (like Plaintiffs' claims based on bad faith, fraud, and constructive fraud) until judgment against Mid-Century is returned unsatisfied. [ECF No. 2 at 8–13; ECF No. 28 at 9–12].

The Court begins with Mid-Century's second argument. In support, Mid-Century relies on 12 O.S. § 682(B), which provides:

> No suit or claim of any nature shall be brought against any

---

[5] Mid-Century does not assert a fraudulent joinder theory based on actual fraud in the pleading of jurisdictional facts. [*See* ECF No. 2 at 8 ("Plaintiffs fraudulently joined [the Exchange] in this action because Plaintiffs cannot establish any viable claim against it in Oklahoma state court.")]. The Court's analysis therefore focuses on the second prong of *Dutcher*'s fraudulent joinder test.

> officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied. This provision includes, but is not limited to, claims based on vicarious liability and alter ego.

[ECF No. 2 at 9; ECF No. 28 at 11].

Mid-Century essentially argues that Plaintiffs' tort claims against the Exchange are premature because an Oklahoma court "can only pierce the corporate veil of a corporation against which Plaintiff has an unsatisfied judgment." *Plaza Shopping Ctr. Gen. P'ship v. Mid-Century Ins. Co.*, 25-CV-1555, 2026 WL 964319, at *3 (W.D. Okla. Apr. 9, 2026) ("*Plaza Shopping Ctr.*") (citation omitted). However, if Plaintiffs' claims against the Exchange are based on its direct participation in the alleged scheme, the claims are not statutorily barred. *See* § 682(B) ("[N]othing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct … not within the scope of their role.").

Mid-Century contends that "Plaintiffs' allegations against [the Exchange] are purely of the alter ego variety," and "Plaintiffs do not allege any specific conduct against [the Exchange]." [ECF No. 28]. As the party alleging fraudulent joinder, Mid-Century bears a heavy burden to demonstrate that Plaintiffs are unable to establish a direct liability claim against the Exchange. *See Dutcher*, 733 F.3d at 988; *Mayes Cnty.*, 2020 WL 6136236, at

*5 ("[I]t is the responsibility of the party asserting fraudulent joinder to demonstrate the plaintiff's inability to establish a cause of action against the nondiverse defendant [in state court]."). Although Defendants face a "high hurdle," *Dutcher*, 733 F.3d at 989, it is not insurmountable. "Where a defendant's 'non-liability is ... established as both a matter of fact and law,' the defendant's joinder is fraudulent and remand is appropriately refused." *Plaza Shopping Ctr.*, 2026 WL 964319, at *2 (quoting *Dodd*, 329 F.2d at 85).

Here, Plaintiffs allege:

- "The adjusters who handle claims, including Plaintiff's [*sic*], are employed by [the Exchange]." [ECF No. 2-1 at 2].
- "[The Exchange] pays the expenses, including claims expenses and indemnity payments, and losses of … [Mid-Century]." [*Id.*].
- "[The Exchange] owns an 80% stake in [Mid-Century]." [ECF No. 24 at 3; ECF No. 24-1 at 7].[6]
- "[The Exchange] … share[s] in the profits from policy premiums collected by [Mid-Century.]" [ECF No. 24 at 3 (citing ECF No. 24-2 at 4)].
- "[The Exchange] provides to [Mid-Century] various services which include policy and premium administration, agents and commissions,

[6] The Court may consider the entire record when evaluating an allegation of fraudulent joinder. *See Dodd*, 329 F.2d at 85.

including claims adjustment services, accounting and financial reporting services, investment management services, and other administrative services." [ECF No. 24 at 4; ECF No. 24-1 at 16–17].

- "[The Exchange] pays [Mid-Century]'s tax liabilities for it and responds to and handles insurance regulators' complaints on [Mid-Century]'s behalf." [ECF No. 24 at 4; ECF No. 24-1 at 18].
- The Exchange assumes the liabilities for the services it provides to its subsidiaries. [ECF No. 24 at 4; ECF No. 24-1 at 17 ("The parties acknowledge that [the Exchange] shall provide these services either directly or through its attorney-in-fact, agents, representatives or affiliates; however, [the Exchange] shall continue to be liable at all times.")].
- "[The Exchange and Mid-Century] have historically shared multiple officers[.]" [ECF No. 24 at 7–8; ECF No. 24-1 at 15–16 (Mid-Century's Board of Directors and Principal Officers in 2019); ECF No. 24-7 at 25–26 (Board of Governors and Principal Officers of the Exchange in 2021), 31–32 (Mid-Century's Board of Directors and Principal Officers in 2021)].

Several issues of fact exist, which include whether and to what extent the Exchange administered Plaintiffs' policy, adjudicated their claim, and participated in the alleged scheme. However, when viewed in the light most

favorable to Plaintiffs, the allegations raise the possibility that the Exchange breached its duty of good faith and fair dealing through direct participation in the scheme.

Based on this record, the Court makes no determination of whether an insurance contract exists between Plaintiffs and the Exchange. But for purposes of this order, the Court will assume the Exchange is a stranger to the contract at issue. Generally, under Oklahoma law, the "duty of dealing fairly and in good faith with the insured arises from the contractual relationship. In the absence of a contractual or statutory relationship, there is no duty which can be breached." *Allstate Ins. Co. v. Amick*, 680 P.2d 362, 364–65 (Okla. 1984). "However, where a 'third party stranger to [an] insurance contract acts so like an insurer that the third party develops a special relationship with the insured, and that third party possesses power, motive, and opportunity to act unscrupulously,' that stranger may be subject to the duty of good faith." *Plaza Shopping Ctr.*, 2026 WL 964319, at *4 (quoting *Hensley v. State Farm Fire & Cas. Co.*, 398 P.3d 11, 18 (Okla. 2017)) (brackets in original) (collecting cases). Here, Plaintiffs allege the Exchange employed claims adjusters, paid claims expenses, shared in the premiums generated by policies, was part of an inter-insurance exchange with its subsidiary, assumed liability for the services it provided to its subsidiary, supported a pattern and practice of wrongful claim denials, and engaged in

the allegedly unlawful claims-handling practices. Such allegations can "give rise to the possibility that the [the parent company] had a special relationship with Plaintiff[s] such that they are subject to the duty of good faith." *Plaza Shopping Ctr.*, 2026 WL 964319, at *5. Therefore, the Court cannot find Plaintiffs "would have no possibility of recovery" against the Exchange in state court.[7] *See Mayes Cnty.*, 2020 WL 6136236, at *3.

Mid-Century has not met its heavy burden of establishing fraudulent joinder. Because Plaintiffs and the Exchange are both Oklahoma citizens, the Court lacks subject matter jurisdiction and must remand.

## III. <u>Conclusion</u>

For the reasons stated above, Plaintiffs' Motion to Remand [ECF No. 24] is GRANTED. This case is REMANDED to the District Court of Tulsa County, State of Oklahoma. The Court directs the Clerk of Court to remand this case back to the Tulsa County District Court.

DATED this 15th day of October, 2026.

Sara Hill

Sara E. Hill
UNITED STATES DISTRICT JUDGE

[7] Because the Court finds that Plaintiffs' allegations give rise to the possibility that the Exchange could have a special relationship with Plaintiffs such that it is subject to the duty of good faith and fair dealing, the Court does not reach Mid-Century's arguments about the breach of contract claim.